**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONDRE ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 5452 |
| | ) | |
| v. | ) | Honorable Franklin U. Valderrama |
| | ) | Judge Presiding |
| ROB JEFFREYS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Rob Jeffreys, Bernita Thigpen and Michael Sturch ("Defendants"), by and through their attorney, Kwame Raoul, Attorney General of Illinois, submit the following memorandum of law in support of their motion to dismiss Plaintiff's Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff Dondre Adams ("Plaintiff"), formerly an inmate in the custody of the Illinois Department of Corrections, brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that he was unconstitutionally held beyond his release date. Plaintiff's claims are alleged against Defendants Rob Jeffreys, Bernita Thigpen and Michael Sturch. Plaintiff's Complaint should be dismissed for failure to state a claim.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's Complaint alleges that his parole was reinstated on May 17, 2019 and he was not released from custody until November 15, 2019. The only allegations directed toward Defendant Jeffreys are that he is the Acting Director of the Illinois Department of Corrections and in that role, he has the authority to release incarcerated persons who have served their court-

ordered sentences. The only allegations in the complaint that were directed toward defendant Thigpen was that she was a Correctional Officer and she delivered a parole violation report to Plaintiff. The only individual allegations against Defendant Sturch were that he was a parole agent employed by IDOC, who was responsible for investigating inmates' proposed host sites for release on MSR and that he prepared a parole violation report that Plaintiff received on May 20, 2019. There are allegations that lump all of the Defendants together alleging that they did not properly investigate Adams's proposed host sites prior to denying approval, and/or did not take steps to ensure that the proposed host sites would be properly investigated.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court need not draw inferences which are not apparent on the face of the complaint. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ARGUMENT

### 1. Plaintiff has Not Pled the Requisite Personal Involvement of Defendants for Them to be Held Liable For a Constitutional Violation

Personal involvement is a prerequisite for individual liability in a Section 1983 action; a defendant must have caused or participated in an alleged constitutional deprivation to incur

liability. *Kuhn v. Goodlow,* 678 F.3d 552, 555–556 (7th Cir. 2012). "In essence, this standard requires proof of *causation, i.e* that the individual defendant actually caused the Plaintiff's injury through his *own conduct." Volk v. Coler,* 638 F.Supp. 1540, 1547. (C.D. Ill. 1986). "Section 1983 will not support a claim based on a *respondeat* superior theory of liability." *Polk County v. Dodson,* 454 U.S. 312, 325 (1981). Thus, failure to take corrective action cannot in and of itself violate § 1983, otherwise the actions of a subordinate could be attributed to the government. *Soderback v. Burnett County,* 752 F.2d 285, 293 (7th Cir. 1985). The complaint in each case must sufficiently allege the Defendant's personal involvement in order to state a constitutional claim. *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1983).

In his Complaint, Plaintiff alleges that Defendant Jeffreys was the Acting Director of the Illinois Department of Corrections and in that role, he has the authority to release incarcerated persons who have served their court-ordered sentences. He alleges that Defendant Thigpen was a Correctional Officer and she delivered a parole violation report to Plaintiff. The allegations against Defendant Sturch were that he was a parole agent employed by IDOC, who was responsible for investigating inmates' proposed host sites for release on MSR and that he prepared a parole violation report that Plaintiff received on May 20, 2019. There are allegations that lump all of the Defendants together alleging that they did not properly investigate Adams's proposed host sites prior to denying approval, and/or did not take steps to ensure that the proposed host sites would be properly investigated. These allegations are insufficient to show that the Defendants were personally involved in the deprivation of any of Plaintiff's Constitutional rights. This type of pleading falls short of the standard set forth in *Twombly* and *Iqbal*. While "detailed factual allegations" are not required, "labels and conclusions, and a

*formulaic recitation of the elements of a cause of action will not do*." *Twombly*, 550 U.S. at 555 (emphasis added).

Additionally, Plaintiff's allegations against the IDOC Director fall short. Allegations that he may have had certain authority fail to show that he was personally involved in the instant case. Section 1983 will not support a claim based on a *respondeat superior* theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453 (1982). As there are no other allegations against the Director that he had any personal involvement in this case, he should be dismissed.

2. **Defendants are Not Responsible for Finding Housing for Plaintiff**

Plaintiff alleges that he was granted mandatory supervised release ("parole"). Inmates who are released on MSR are subject to conditions pertaining to their release, per Title 20 of the Illinois Administrative Code, Section 1610.110 - Arrangements for Parole:

a) When an order for release on parole is entered, it shall not be effective and the applicant shall not be released until the Office of Adult Parole Services or Family and Youth Counseling Services has satisfied itself that suitable arrangements have been made for:

1) The applicant's gainful employment and/or educational or training programs and for a proper and approved residence.

2) The chief administrative officer of the institution shall have the authority to hold the prospective parolee until these arrangements have been approved. If the applicant is not released within 90 days from the date of the order granting parole, the chief administrative officer shall notify the Executive Director of the Board and the matter will be reviewed by the Board.

b) An applicant who has been granted parole but violated institution rules prior to release on parole, may, in the discretion of the chief administrative officer, be held for further consideration by the Board.

Additionally, Illinois law does not require that Defendants find a host site for an inmate on MSR. *Lucas v. Department of Corrections*, 2012 IL App (4th) 110004, 967 N.E.2d 832, 835 (4th

Dist. 2012). There are no statutes that require DOC to find residential placement for an inmate before the commencement of MSR. Instead, section 3-14-3 of the Unified Code of Corrections (730 ILCS 5/3-14-3 (West 2008)) states that DOC "*may* in addition to other services provide (1) assistance in residential placement." The word "may" usually signifies discretion, not duty. *Krautsack v. Anderson*, 223 Ill. 2d 541, 554 (2006). As such, IDOC employees had no duty to find placement for the Plaintiff.

### 3. Defendants Are Entitled To Qualified Immunity

Defendants are immune from damages and from suit through the application of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), the Supreme Court held that the "government officials performing discretional functions, generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* at 818.

> [An] officer should not be held liable in damages under §1983 unless the constitutional right he was alleged to have violated was "clearly established" at the time of the violation.

As the U.S. Supreme Court stated in *Anderson v. Creighton,* 483 U.S. 635, 638 (1987), "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." In *Anderson*, the Court rejected the notion that a plaintiff's pleading which alleged generally the violation of a clearly established broad constitutional guarantee, such as the right to be free from unreasonable search and seizure or the right to due process of law, would be sufficient to overcome the defense of qualified immunity, which is a defense not only from liability but also from the burdens of trial. *Id.* The court noted that if the "clearly established law" standard which is essential to the assessment of qualified immunity is applied at the "level of generality" of the violation of such a broad constitutional guarantee, "Plaintiff would be able to convert the rule of

qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of abstract rights. *Harlow* would be transformed from guarantee of immunity to a rule of pleading." *Anderson,* at 3039.

The Court in *Anderson* required analysis beyond an allegation of a general violation of constitutionally protected right to determine if the circumstances confronted by individual defendants were sufficient to create in that defendant liability for these acts or omissions.

> . . . (The) right of the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* at 640.

Implicit in the analysis of qualified immunity mandated by the *Anderson* court is the requirement that the law which a defendant is alleged to have violated must have been clearly established in the particularized sense and that the violation must have been intentional or the result of some gross misfeasance or nonfeasance on the part of the governmental officer arising to the level of "incompetence". Neither factor is present from the facts in this case. Stated another way, under the facts of this case, the Defendants could not possibly have been on notice that they violated any clearly established law because, per the authority cited in this motion, they have not violated any established law, and as such are entitled to the defense of qualified immunity. *Rakovich v. Wade,* 850 F.2d 180, 1211-1212 (7th Cir. 1988). Furthermore, as at least one Illinois Court has held that the IDOC does not have a duty to locate host sites for inmates, to the extent the Court rules to the contrary shows that the law was not sufficiently established to hold the Defendants liable. (see *Lucas v. Department of Corrections,* 2012 IL App (4th) 110004, 967

N.E.2d 832, 835 (4th Dist. 2012) Illinois law does not require that Defendants find a host site for inmate on MSR; see generally *Neville v. Walker,* 376 Ill.App.3d 1115, 1116, 878 N.E.2d 831, 833 ( 4th Dist. 2007), inmate on MSR cannot be released without a host site)).

The Plaintiff was in violation of the conditions of his MSR and Illinois law. Defendants were justified in relying on that law in finding Plaintiff in violation. As such, the Defendants are entitled to qualified immunity.

WHEREFORE, for the reasons stated above, Defendants respectfully request that this Honorable Court grant their Rule 12(b)(6) motion and enter an order dismissing Plaintiff's Complaint, and for such other relief as the Court finds just and reasonable.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois            /s *James P. Doran*
                                        JAMES P. DORAN
                                        Assistant Attorney General
                                        General Law Bureau
                                        100 W. Randolph St., 13th Fl.
                                        Chicago, Illinois 60601
                                        (312) 814-7202
                                        jdoran@atg.state.il.us