IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONDRE ADAMS,<br><br>        Plaintiff,<br><br>        v.<br><br>ROB JEFFREYS, ACTING DIRECTOR of the ILLINOIS DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>        Defendants. | No. 19-cv-5452<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dondre Adams (Adams), formerly an inmate in the custody of the Illinois Department of Corrections (IDOC), was imprisoned for six months beyond his release date. Adams has filed suit asserting 42 U.S.C. § 1983 claims against Rob Jeffreys (Jeffreys), the Acting Director of the IDOC, and several correction officers, including Bernita Thigpen (Thigpen), Michael Sturch (Sturch) (collectively Defendants), as well as several unknown "John Doe" correction officers. R. 41, SAC.[1] Defendants have moved to dismiss the Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 54, Mot. Dismiss. For the reasons that follow, Defendants' motion is granted in part and denied in part.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

Adams was convicted of a sex offense in 1994. SAC ¶ 16.[2]  As a result of his conviction, Adams was required to register annually and notify a reporting agency if his address or contact information changed. *Id.* ¶ 17. In August 2017, Adams was charged with violation of the Sex Offender Registration Act, 730 Ill. Comp. Stat. 150/10(a). *Id.* ¶ 18. On May 14, 2019, Adams pleaded guilty to the charge and was sentenced to a term of imprisonment of 30 months, to be served at 50%, subject to time served. *Id.* ¶ 19. Adams was also sentenced to a one-year term of Mandatory Supervised Release (MSR). *Id.* ¶ 20. After pleading guilty, Adams was transferred into IDOC custody and arrived at Stateville Correctional Center (Stateville) on May 17, 2019. *Id.* ¶ 22. Before being transferred into IDOC custody, Adams had been in custody in McLean County, Illinois, from August 29, 2017 to January 22, 2018; March 22, 2018 to August 16, 2018; and November 10, 2018 to May 13, 2019. *Id.* ¶ 21, Exh. D. Adams was given credit for 479 days of time served, or approximately 15.5 months. *Id.* ¶ 21, Exhs. C–D.

Based on his sentence and prior incarceration, Adams alleges that by the time he arrived at Stateville on May 17, 2019, he was eligible for release on MSR. SAC ¶¶ 22–23. To be released on MSR, Adams was required to have a "host site" approved by IDOC where he could serve his one-year MSR term. *Id.* ¶ 24. Upon his arrival at Stateville and in anticipation of his release, Adams gave his counselor, John Doe 1, his aunt's address and contact information for an investigation of his aunt's home as

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Brown. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

a host site. *Id*. ¶ 25. Adams also submitted a request to John Doe 1 to discuss his host site. *Id*. ¶ 27. John Doe 1 informed Adamas that he would have to see the parole board first. *Id*.

On May 20, 2019, Adams received a Parole Violation Report from IDOC correctional officer Thigpen. SAC ¶ 28. The report was prepared by parole agent Michael Sturch, which listed a release date of May 17, 2019, and a parole violation of the same date. *Id*. ¶ 28. Per the report, Adams was in "violation of MSR Rule #5 because no suitable host site for intensive supervision could be found. This agency attempted to place the offender at (all) places with family and/or friends in the community and no suitable host site was found to supervise the offender on intensive supervision. This agency attempted to place the offender at (all) places that [IDOC] would pay for and the paid placements for any number of reasons could not accept the offender." *Id*. ¶ 28, Exh. F. Adams was not told why his aunt's home had not been approved as a host site. *Id*. ¶ 29.

On May 21, 2019, Adams contacted John Doe 1 and informed John Doe 1 that he had additional site addresses he could submit for consideration. SAC ¶ 31. Adams was informed that he would have to see the Prisoner Review Board (PRB or parole board) first. *Id*. On June 11, 2019, Adams met with the PRB. *Id*. ¶ 33. The PRB "resumed" Adams's parole on that date, meaning that he was eligible for release on MSR, subject to IDOC approval of a host site. *Id*. ¶ 33. Adams subsequently submitted three host sites, including his aunt's home. *Id*. ¶ 34. Adams submitted three addresses of family members for consideration as proposed sites, and also provided

IDOC with the contact information for each family member. *Id.* ¶ 34. In July 2019, John Doe 1 informed Adams, without explanation, that his host sites had not been approved. *Id.* ¶¶ 35–36.

In August 2019, Adams was transferred to Danville Correctional Center (Danville). SAC ¶ 38. Shortly after arriving at Danville, Adams submitted several proposed host sites to his counselor, John Doe 2, again including his aunt's home in Bloomington. *Id.* ¶ 39. Approximately one week later, Jon Doe 2 informed Adams that his proposed sites had not been approved. *Id.* ¶ 40. Without the approval of a host site, Adams remained incarcerated until his release on November 15, 2019. *Id.* ¶ 44. Adams was released on said date because he had "maxed out" his MSR time, meaning that he had served his entire term of MSR while remaining in prison. *Id.*

Adams subsequently filed suit against Defendants, asserting violations of his constitutional rights as the Defendants failed to properly investigate Adams' proposed host sites, resulting in his extended incarceration. Adams' SAC is the operative complaint, in which he asserts a Section 1983 claim for violation of his Eighth Amendment rights (Count I) and a Section 1983 claim for violation of his Fourteenth Amendment rights (Count II).

Defendants move to dismiss the SAC under Rule 12(b)(6). Mot. Dismiss; R. 55, Memo. Dismiss.

### Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811,

820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Section 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). To state a Section 1983 claim, a plaintiff must show that they were "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). Individual liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or

participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). As such, allegations must demonstrate that a defendant was "personally involved in the particular deprivation alleged or that the deprivation occurred at the defendant's direction or with the defendant's knowledge and consent." *Neely v. Randel*, 2013 WL 3321451, at \*3 (N.D. Ill. June 29, 2013).

Defendants argue that the Court should dismiss the Complaint for three reasons. First, Adams fails to plead the requisite personal involvement required for Section 1983 liability as the allegations against the Defendants are all "lump[ed] together." Memo. Dismiss at 2–4. Second, Defendants are not responsible for finding housing for Adams. *Id.* at 4–5. Last, Defendants are immune from damages based on the doctrine of qualified immunity. *Id.* at 5–7. The Court addresses each argument in turn.

## I. Defendants' Personal Involvement

Defendants contend that Adams fails to adequately allege any Defendant's personal involvement in the alleged deprivation of his constitutional rights to sufficiently plead individual violations of Section 1983. Memo. Dismiss at 2–3. Instead, they argue that Adams impermissibly resorts to group pleading by alleging that Defendants "did not properly investigate Adam's proposed host sites prior to denying approval, and/or did not take steps to ensure that the proposed host sites would be properly investigate." *Id.* at 3.

Adams counters that Defendants seek to impose a higher pleading standard than what is required under Rule 8(a), which requires only a "short and plain

6

statement of the claim showing that [Adams] is entitled to relief, in order to give defendants fair notice of the claims and the grounds upon which they rest." R. 63, Resp. at 6. The key question at the motion to dismiss stage, asserts Adams, is whether the plaintiff has "generally name[d] the persons responsible for the problem." *Id.* at 7 (quoting *Hyung Seok Koh v. Graf*, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013)). Adams insist that he has done so. The Court agrees.

The Eighth Amendment prohibits "cruel and unusual punishment of a prisoner." U.S. CONST. AMEND. VIII. A plaintiff states a claim for an Eighth Amendment violation if he or she is detained in jail for longer than he or she should have been, due to the deliberate indifference of correction officials. *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct, facilitates, approves, condones, or 'turn[s] a blind eye to it.'" *Perez*, 792 F.3d at 781 (quoting *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir. 1996)).

Beginning with Defendant Jeffreys, Adams alleges that Jeffreys, in his role as Acting Director of IDOC, had authority to release incarcerated persons like Adams who had served their court-ordered sentences. Resp. at 7–8 (citing SAC ¶ 10). Adams further pleads that Jeffreys, despite having this authority and knowledge that the failure to investigate proposed sites would result in an inmate's continued incarceration, failed to investigate and/or failed to take steps to ensure that an investigation was caried out. *Id.* at 8 (citing SAC 30, 37, 41, 49–50, 59). These allegations, however, fail to reveal that Jeffreys had any knowledge of or personal

7

involvement in Adams' alleged constitutional deprivations. Standing alone, these allegations seem to suggest liability based on *respondeat superior*, which is improper. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1982). Adams, however, alleges more: he also alleges that there exists an "established IDOC practice" of incarcerating individuals convicted of sex offenses beyond their release date. SAC ¶ 3. As Adams correctly points out, "the personal involvement of senior jail officials . . . can be inferred at the motion to dismiss stage where . . . the plaintiff alleges potentially systemic, as opposed to clearly localized, constitutional violations." Resp. at 8 (quoting *Smith v. Dart,* 803 F.3d 304, 309 n.2 (7th Cir. 2015) (internal quotations omitted)); *see also Eason v. Pritzker*, 2020 WL 6781794, at *5 (N.D. Ill. Nov. 18, 2020). Therefore, Jeffreys, as the Acting Director of the IDOC who has authority over the release of inmates like Adams, is presumed to know about the alleged practice of incarcerating convicted sex offenders beyond their release dates. The SAC alleges enough to move beyond the pleadings, as Adams plausibly alleges that Jeffreys was aware of the constitutional deprivations.

As to Sturch, the Court also finds that Adams has adequately pled his involvement in the alleged constitutional violation. Adams alleges that Sturch prepared a parole violation report indicating that no suitable host site could be found for Adams. Resp. at 3 (citing SAC ¶¶ 12, 28). He did so without investigating Adams's proposed host site (including contacting Adams' relatives) or taking steps to ensure that a proper investigation was carried out, despite knowing that Adams would remain incarcerated past his release date if his proposed site was not investigated.

8

*Id.* at 3–4 (citing SAC ¶¶ 30, 37, 45–62). The Court agrees with Adams that these allegations are sufficient to put Sturch on notice of the basis of Adams' claims against him. *See, e.g., Ortega v. Halliday*, 2020 WL 6681376, at *2, *5 (S.D. Ill. Nov. 12, 2020) (denying motion to dismiss similar claims against defendant correctional counselor who refused prisoner-plaintiff's proposed host site and did not enter it into the IDOC's offender tracking system).

The Court, however, cannot say the same for Thigpen. The entire allegation against Thigpen is that he *delivered* to Adams the parole violation report prepared by Sturch. Resp. at 4 (citing SAC ¶¶ 11, 28). That is not enough. *See, e.g., Ortega*, 2020 WL 6681376, at *3 (dismissing similar claim against defendant who provided to plaintiff-prison a report opposing proposed MSR site, and noting that such an action actually seemed to have helped plaintiff's claims against other prison officials).

In sum, the Court finds in viewing the allegations of the SAC in the light most favorable to Adams and drawing all reasonable inferences in favor of Adams, that the SAC adequately alleges claims against Jeffreys and Sturch, but fails to do so against Thigpen.

## II.    Housing Site

Next, Defendants argue that the Court should dismiss the SAC because they are not required under Illinois law to find a host site for an inmate on MSR. Memo. Dismiss at 4–5 (citing *Lucas v. Department of Corrections*, 967 N.E.2d 832, 835 (Ill. App. Ct. 2012)). Adams responds that Defendants misconstrue his claims: his claims are based on Defendants' failure to ensure that the host sites Adams proposed were

properly investigated, not that Defendants failed to independently search for and obtain housing for Adams. Resp. at 9–10.

Adams clarifies that he is alleging in Count I that his Eighth Amendment rights were violated when the Defendants failed to investigate host sites that Adams proposed in numerous written requests, which forced Adams to serve an additional six months past his release date. Resp. at 9 (citing SAC ¶¶ 45–53). Adams cites to two similar cases within the Seventh Circuit where courts have held that the failure to investigate a proposed host site states a claim under the Eighth Amendment. Resp. at 9–10 (citing *Ortega*, 2020 WL 6681376, at *2, 4–5; *Stepney v. Johnson*, 2016 WL 5720367, *3–5 (N.D. Ill. 2016)). Similarly, for his Count II Fourteenth Amendment claim, Adams explains that he alleges that Defendants violated his procedural due process by repeatedly denying approval of his proposed sites without undertaking an adequate investigation, including by failing to contact or visit the homes of the relatives who were willing to host him while he served his term of MSR. Resp. at 10. Again, Adams cites to two similar in-Circuit cases that have held that the failure to properly investigate proposed host cites can give rise to procedural due process claims. *Id.* (citing *Ortega*, 2020 WL 6681376, at *4–5; *Murphy v. Madigan,* 2017 WL 3581175, *9–10 (N.D. Ill. Aug. 18, 2017)). Notably, in their Reply, Defendants fail to address, much less distinguish the cases cited by Adams in support of his argument as to both claims. R. 64, Reply. Again, the Court agrees with Adams. He has properly alleged violations of his Eighth and Fourteenth Amendment rights based on

Defendants' failure to adequately investigate his proposed host sites, resulting in Adams serving an additional six month in custody past his release date.

### III.    Qualified Immunity

Finally, Defendants argue that they are immune from damages under the doctrine of qualified immunity, as the law they are alleged to have violated was neither clearly established nor was the violation intentional or the result of gross misfeasance or nonfeasance. Memo. Dismiss 5–7. Adams retorts that dismissal on the basis of qualified immunity is premature because such a defense is fact intensive. Resp. at 11 (citing *Thuet v. Chi. Pub. Sch.*, 2020 WL 5702195, at *3 (N.D. Ill. Sept. 24, 2020); *Baker v. City of Chi.*, 2020 WL 5110377, at *5 (N.D. Ill. Aug. 31, 2020); *Johnson v. Winstead*, 447 F. Supp. 3d 715, 720–71 (N.D. Ill. 2019); *Blacher v. Vill. of Dolton*, 2019 WL 1584552, at *3 (N.D. Ill. Apr. 12, 2019); *Cage v. Harper,* 2018 WL 4144624, at *5 (N.D. Ill. Aug. 30, 2018)).

Qualified immunity "'shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 308 (2015) (*per curiam*)). "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices on the other." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (internal quotations and citations omitted).

11

"The purpose of qualified immunity is to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is an affirmative defense, but once a defendant properly raises the defense, the burden shifts to the plaintiff to defeat it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2722 (2020). Courts, in determining whether qualified immunity applies, engage in a two-prong inquiry. *Rose ex rel. Estate of Williams v. Cline*, 902 F.3d 643, 648 (7th Cir. 2018). Under the first prong, the court inquires whether the facts, taken in the light most favorable to the injured party, show that the officer's conduct violated a federal right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Under the second prong, the court inquires whether the constitutional right was clearly established at the time of the challenged conduct. *Id*. "[D]ismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)).

The Court finds that Adams has alleged facts that, taken in the light most favorable to Adams, plausibly support claims of deliberate indifference to Adams' Eight Amendment right to be free from cruel and unusual punishment (Count I) and of a violation of his procedural due process rights infringing in his cognizable liberty interest in being released from prison (Count II), and that said rights were clearly established at the time of the violations of Adams's right. This conclusion is consistent

with Seventh Circuit precedent which teaches that "because a qualified immunity defense so closely depends on the facts of the case, a complaint is not generally dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). This is so "because a plaintiff is not required to anticipate and overcome the qualified immunity defense in their pleadings." *Id.* at 589. Whether Defendants are ultimately entitled to immunity is a question for another day.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [54] is granted in part and denied in part. Specifically, the Court dismisses without prejudice Adams's claim against Thigpen but otherwise denies Defendants' motion to dismiss. Also before the Court is Adam's Motion to Expedite Discovery and File an Amended Complaint to Identify Doe Defendants [67]. Mot. Disc. In the Motion, Adams indicated the as a matter of policy, the IDOC opposes discovery while a motion to dismiss is pending. Mot. Disc. at 3 (citing Exh. 3 ¶ 7). Now that the Motion to Dismiss has been resolved, by October 26, 2021, Defendants are directed to file either a Response to the Motion to Expedite Discovery or a Status Report indicating that they

do not oppose the Motion. Plaintiff has until November 15, 2021 to file an Amended Complaint as to Defendant Thigpen and potentially as to the Doe Defendants.

Franklin U. Valderrama
United States District Judge

Dated: October 21, 2021

14