IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONDRE ADAMS,<br><br>        Plaintiff,<br><br>    v.<br><br>ROB JEFFREYS, Director of the Illinois Department of Corrections; MICHAEL STURCH, Parole Agent; TYNEER BUTLER-WINTERS, Field Services Representative; CHRISTOPHER GLECKLER, Correctional Counselor; BRIANNA HENDERSON, Correctional Counselor; SIMONE THORNTON, Correctional Counselor; and KENDRA ZIEMNISKY, Corrections Assessment Specialist,<br><br>        Defendants. | Case No. 19 C 5452<br><br>Hon. Franklin U. Valderrama<br><br>**JURY TRIAL DEMANDED** |

### THIRD AMENDED COMPLAINT

Plaintiff Dondre Adams, for his Third Amended Complaint against Rob Jeffreys, Michael Sturch, Tyneer Butler-Winters, Christopher Gleckler, Brianna Henderson, Simone Thornton, and Kendra Ziemnisky, alleges and states as follows:

### Background

1.    This lawsuit, which arises under 42 U.S.C. § 1983, seeks to remedy the wrongful incarceration of Plaintiff Dondre Adams. Due to Defendants' intentional acts and deliberate indifference, Adams was imprisoned for approximately six months beyond the date on which he was eligible for release on Mandatory Supervised Release ("MSR"), in violation of his rights under the Eighth and Fourteenth Amendments.

2.    In order to be released from the physical custody of the Illinois Department of Corrections ("IDOC"), Adams was required to identify a "host site," approved by IDOC, at which

1

he would reside while completing his term of MSR. *See* 730 ILCS 5/3-3-7(b-1)(1) (a person required to register as a sex offender must "reside only at a Department approved location").

3. Adams was eligible for release on MSR on May 17, 2019. However, because of Defendants' intentional failure to properly investigate Adams's proposed host sites for serving his term of MSR, Adams was not released from the custody of the IDOC until approximately six months later, on November 15, 2019.

4. Incarcerating individuals convicted of sex offenses beyond their release dates is part of an established IDOC practice that has been found to be unlawful. *See, e.g., Murphy v. Raoul*, 380 F. Supp. 3d 731, 763–66 (N.D. Ill. 2019) (Kendall, J.) (granting summary judgment to plaintiffs, a class of sex offenders held beyond their release dates, on their Eighth Amendment claim).

5. IDOC will not release a homeless individual who has been designated a sex offender, because an approved host site is required. *See Murphy*, 380 F. Supp. 3d at 764. Yet, according to the Illinois State Police listing of transitional housing facilities ("halfway houses") licensed by IDOC, there are currently no state-funded facilities that accept individuals who have been designated sex offenders.[1] Thus, it is "virtually impossible" for someone who is homeless and who cannot afford to secure his own housing to "comply with the IDOC's application of the host site requirement[.]" *Id.*.

6. Because Adams was unable to afford housing on his own and could not earn money due to his incarceration, that is precisely the impossible situation Adams found himself placed into by Defendants' intentional failure to adequately investigate Adams's proposed host sites with relatives.

---

[1] Illinois State Police, "Illinois Sex Offender Information," https://isp.illinois.gov/Sor/TransitionalHousing (last accessed November 11, 2021), attached here as Exhibit A.

7. As a result of Defendants' actions, Adams was forced to serve an additional six months in prison, beyond the date on which he was eligible for release. Accordingly, he now brings this action to recover compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## Jurisdiction and Venue

8. Jurisdiction for Adams's claims is based on 28 U.S.C. § 1331 because Adams's claims arise under the United States Constitution.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to Adams's claims occurred in this district.

## The Parties

10. Plaintiff Dondre Adams resides in Bloomington, Illinois, and was at all times mentioned herein a prisoner of the State of Illinois, in the custody of IDOC.

11. Defendant Rob Jeffreys is the Director of IDOC. In that role, he has the authority to release incarcerated persons who have served their court-ordered sentences. Jeffreys also has final authority to set IDOC policies regarding approval of inmates' host sites. Jeffreys is sued in his individual and official capacities.

12. Defendant Michael Sturch was at all times mentioned herein a parole agent employed by IDOC, who was responsible for investigating inmates' proposed host sites for release on MSR. Sturch is sued in his individual and official capacities.

13. Defendant Tyneer Butler-Winters was at all times mentioned herein a Field Services Representative at Stateville, who was responsible for the release of inmates at Stateville on MSR. Butler-Winters is sued in her individual and official capacities.

14. Defendant Christopher Gleckler was at all times mentioned herein a correctional counselor at Danville who was responsible for the release of inmates at Danville on MSR. Gleckler is sued in his individual and official capacities.

15. Defendant Brianna Henderson was at all times mentioned herein a correctional counselor at Stateville who was responsible for the release of inmates at Stateville on MSR. Henderson is sued in her individual and official capacities.

16. Defendant Simone Thornton was at all times mentioned herein a correctional counselor at Stateville who was responsible for the release of inmates at Stateville on MSR. Thornton is sued in her individual and official capacities.

17. Defendant Kendra Ziemnisky was at all times mentioned herein a Corrections Assessment Specialist at Danville Correctional Center ("Danville"), who was responsible for the release of inmates at Danville on MSR. Ziemnisky is sued in her individual and official capacities.

## Facts

18. Adams was convicted of a sex offense in 1994.

19. As a result of his conviction, Adams is required to register annually and to notify a reporting agency if his address or contact information changes.

20. In August 2017, Adams was charged with a violation of 730 Ill. Comp. Stat. 150/10(a).

21. On May 14, 2019, Adams pleaded guilty to the charge and was sentenced to a term of imprisonment of 30 months, to be served at 50%, subject to time served. *See* Exhibit B, Guilty Plea; Exhibit C, Plea Agreement; Exhibit D, Sentencing Form.

22. Adams also was sentenced to a one-year term of MSR. *See* Exhibit C; Exhibit D.

23. Prior to being transferred into IDOC custody, Adams had been in custody in McLean County, Illinois, from August 29, 2017 to January 22, 2018; March 22, 2018 to August 16, 2018; and November 10, 2018 to May 13, 2019. As reflected in his sentencing paperwork, Adams was given credit for 479 days of time served. *See* Exhibit C; Exhibit D.

24. After pleading guilty, Adams was transferred into IDOC custody. He arrived at Stateville on May 17, 2019.

25. When Adams arrived at Stateville, he had already received credit for 479 days of time served, or approximately 15 ½ months. Therefore, because his 30-month sentence was to be served at 50% (15 months), he was eligible for release on MSR upon his arrival at Stateville.

26. To be released on MSR, Adams was required to have a "host site," approved by IDOC, where he could serve the one-year term of MSR.

27. On May 17, 2019, upon arrival at Stateville and in anticipation of release, Adams provided to Tyneer Butler-Winters, then an acting Field Services Representative, an address for investigation as a host site. The proposed host site was the home of his aunt, Janis Foster, in Bloomington, Illinois, where Adams had previously resided. Adams also provided contact information for his aunt.

28. Butler-Winters told Adams that he would not be going home on May 17, 2019, because he was a sex offender.

29. That same day—May 17, 2019—Adams submitted a request to Butler-Winters to discuss his host site. Butler-Winters responded that Adams would have to see the parole board first. *See* Exhibit E, Offender Requests.

30. On May 20, 2019, Adams received a Parole Violation Report. The report, prepared by parole agent Michael Sturch, listed a release date of May 17, 2019, and a parole violation for

5

the same date. According to the report, Adams was "in violation of MSR Rule #5 because no suitable host site for intensive supervision could be found. This agency attempted to place the offender at (all) places with family and/or friends in the community and no suitable host site was found to supervise the offender on intensive supervision. This agency attempted to place the offender at (all) places that [IDOC] would pay for and the paid placements for any number of reasons could not accept the offender." *See* Exhibit F, Parole Violation Report.

31. Adams was not provided with an explanation as to why his aunt's home had not been approved as a host site.

32. On information and belief, Defendants Sturch and Butler-Winters, as well as Defendant Jeffreys, did not properly investigate Adams's aunt's home to evaluate it as a possible host site on or before May 20, 2019, and/or did not take steps to ensure that the proposed host site would be properly investigated.

33. On May 21, 2019, Adams contacted Butler-Winters regarding his host site, stating that he had additional site addresses he could submit for consideration. Butler-Winters again informed Adams that he would need to see the parole board first. *See* Exhibit E.

34. On June 6, 2019, Adams wrote to Butler-Winters, asking when he would be able to meet with the parole board. He was told that the hearing would take place on June 11, 2019. *See* Exhibit G, Note to Counselor.

35. On June 11, 2019, Adams met with the Prisoner Review Board ("PRB"), also known as the parole board. The PRB "resumed" his parole on that date, meaning that he was eligible for release on MSR, subject to IDOC approval of a host site.

36. Subsequently, Adams submitted several addresses for consideration as proposed host sites. These included (1) Janis Foster's home in Bloomington; (2) the home of another aunt,

6

Veronica Boyd, in Chicago; and (3) the home of a cousin, Jamonte Stewart, in Bloomington. Adams provided IDOC with contact information for each of these family members. Adams was advised by correctional counselor Brianna Henderson that one of his aunt's addresses was being investigated.

37. In July 2019, Adams received a response from correctional counselor Simone Thornton that the proposed sites had not been approved.

38. Again, Adams was not provided with an explanation as to why the proposed host sites had not been approved.

39. On information and belief, Defendants Butler-Winters, Sturch, Henderson, and Thornton (the "Stateville Defendants") and Defendant Jeffreys did not properly investigate Adams's proposed host sites prior to denying approval in July 2019, and/or did not take steps to ensure that the proposed host sites would be properly investigated.

40. On or about August 29, 2019, Adams was transferred to Danville.

41. Shortly after arriving at Danville, Adams submitted several proposed host sites to corrections assessment specialist Kendra Ziemnisky, again including his aunt's home in Bloomington.

42. Ziemnisky informed Adams that IDOC was seeking a transitional housing facility ("halfway house") where Adams could reside upon release on MSR—despite the fact that, on information and belief, there were no such facilities available for inmates convicted of sex offenses. *See* Ex. A.

43. On or about September 19, 2019, Adams was informed by correctional counselor/acting Field Services Representative Christopher Gleckler—that his proposed host sites

7

had not been approved. Gleckler did not provide Adams with any explanation as to why the host sites were rejected.

44. On information and belief, Defendants Gleckler and Ziemnisky (collectively, the "Danville Defendants"), as well as Defendant Jeffreys, did not properly investigate Adams's proposed host sites prior to denying approval after his arrival at Danville, and/or did not take steps to ensure that the proposed host sites would be properly investigated.

45. Adams had no other options for obtaining an approved host site. He is indigent and could not afford to secure housing on his own and his family members were unable to help him pay for housing. Further, halfway houses were unavailable to him, because there were no state-funded transitional housing facilities in Illinois that accept sex offenders. *See* Exhibit A.

46. Accordingly, due to Defendants' failure to adequately investigate Adams's proposed host sites, and/or their failure to take steps to ensure that the sites were properly investigated, Adams had no choice but to remain incarcerated until November 15, 2019. Adams was released on that date because he had "maxed out" his MSR time, meaning that he had served his entire term of MSR while remaining in prison.

### Count I – Violation of Eighth Amendment, 42 U.S.C. § 1983
### (against all Defendants)

47. Adams realleges and reincorporates, as though fully set forth herein, each and every allegation contained above.

48. At all relevant times, Defendants were acting under color of law.

49. Defendants had a duty to investigate Adams's proposed host sites or to assign their investigations to parole agents, and similarly, Defendants had a duty to verify that Adams's proposed host sites were approved or denied on a proper basis.

8

50. Adams's proposed host sites, including his aunt's home in Bloomington, were not adequately investigated prior to his arrival at Stateville or during his incarceration at Stateville and Danville.

51. On information and belief, Defendants knew that if Adams's proposed host sites were not investigated, Adams would remain incarcerated past his release date.

52. Despite submitting a proposed host site on May 17, 2019, Adams was given a parole violation report on May 20, 2019, without a proper investigation of the site having been conducted by the Stateville Defendants and/or Defendant Jeffreys. Subsequently, when Adams proposed additional host sites, on information and belief, Defendants either failed to take steps to ensure that they were adequately investigated, or failed to carry out an adequate investigation. As a result, Adams was not released until November 15, 2019.

53. Defendants also failed to communicate to Adams the reasons his host sites were rejected, which prevented him from correcting any existing issues with the host sites or exploring other alternatives. And Defendants misinformed Adams about the availability of transitional housing facilities, when in fact, none were available.

54. By failing to properly investigate Adams's proposed host sites, even after repeated written requests from Adams, Defendants acted in reckless and conscious disregard of, and with deliberate indifference to, Adams's constitutional right to be free from cruel and unusual punishment under the Eighth Amendment.

55. A criminal sentence must be proportionate to the crime for which the defendant has been convicted.

56. Defendants' failure to adequately investigate Adams's proposed host sites, and misinforming Adams, resulted in Adams serving a sentence that was six months longer than that

9

imposed on him by the court, which was grossly disproportionate and without reasonable justification.

WHEREFORE, Adams respectfully requests that the Court enter judgment in his favor and against Defendants and award Adams the following relief, enforceable against Defendants jointly and severally:

      A.      Compensatory damages;

      B.      Punitive damages;

      C.      Attorneys' fees and costs; and

      D.      Such other relief as this Court deems just and proper.

### Count II – Fourteenth Amendment Procedural Due Process, 42 U.S.C. § 1983
### (against all Defendants)

57. Adams realleges and reincorporates, as though fully set forth herein, each and every allegation contained above.

58. Upon his arrival at Stateville on May 17, 2019, Adams was eligible for release on MSR due to already having served 479 days in the county jail.

59. After receiving a parole violation on May 20, 2019, Adams's parole was "resumed" on June 11, 2019, meaning that the PRB had approved him for release on MSR.

60. Accordingly, as of June 11, 2019 at the latest, Adams had a cognizable liberty interest in being released from prison.

61. On multiple occasions as set forth above, Adams provided Defendants with proposed host sites at which he could serve his term of MSR.

62. On information and belief, Defendants failed to take steps to properly investigate Adams's proposed host sites, including contacting or visiting the home of Janis Foster, Adams's aunt, or other family members for whom Adams had provided contact information.

63. Defendants repeatedly denied approval of all host sites Adams proposed, without providing Adams with any explanation of the denials, thereby preventing Adams from seeking to correct any issues with the host sites or exploring other alternatives. And Defendants misinformed Adams about the possibility of being released to a transitional housing facility, when in fact no such facility was available.

64. By failing to properly investigate Adams's proposed host sites or take steps toward investigation of same prior to denying approval, and misinforming Adams, Defendants violated Adams's right to procedural due process.

65. As a result of these violations, Adams was unlawfully imprisoned for approximately six months past the date he was eligible for release on MSR and was approved for release by the PRB.

WHEREFORE, Adams respectfully requests that the Court enter judgment in his favor and against Defendants and award Adams the following relief, enforceable against Defendants jointly and severally:

      A. Compensatory damages;

      B. Punitive damages;

      C. Attorneys' fees and costs; and

      D. Such other relief as this Court deems just and proper.

**Jury Demand**

With regard to any issue that may be appropriately heard by a jury in this case, Adams hereby demands a trial by jury.

Dated: November 12, 2021

Respectfully submitted,

DONDRE ADAMS

By: */s/ Gregory M. Boyle*
One of his attorneys

Gregory M. Boyle
Katherine M. Funderburg
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 222-9350

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 12, 2021, he has caused a copy of the foregoing to be served via ECF on the following:

Amanda Bacoyanis
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, IL 60601
Amanda.Bacoyanis@ilag.gov

By: */s/ Gregory M. Boyle*
Gregory M. Boyle
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 222-9350